**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

IN RE:                                                    CHAPTER 7 (Involuntary)

SICEL TECHNOLOGIES, INC.                      CASE NO. 10-06366-8-SWH

　　　　　　　　　Debtor.

**PETITIONING CREDITOR'S POST-HEARING BRIEF IN SUPPORT OF THE
INVOLUNTARY CHAPTER 7 PETITION**

The initial five Petitioning Creditors, through counsel, submit this Brief in Support of the

Involuntary Chapter 7 Petition.  This Brief is intended to address the limited issue raised at the

hearing on the validity of the involuntary Chapter 7 petition of whether there are three creditors

holding claims that are not contingent or the subject of a bona fide dispute.

I.        11 U.S.C. § 303

Section 303 of the Bankruptcy Code states an involuntary case is commenced by filing a

petition with the bankruptcy court "by three or more entities, each of which is either a holder of a

<u>claim</u> against such person that is not contingent as to liability or the subject of a bona fide dispute

as to liability or amount". 11 U.S.C. §303(b)(1) (2010) (emphasis added).  These claims must

aggregate to at least $14,425.

II.        The Accrued Vacation Claims

a.   The Vacation Claims are Not Contingent

The term "claim" is very broad and includes "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A) (2010).

There are nine petitioning creditors: Glenn Seymour; Robert T. Crew; Paul McDaniel; Eric Espenhahn; Pamela A. McNulty; Michelle Sweeney; Fred W. Alford, III; Tom V. Shadrix; and Lisa Armstrong. Debtor's Exhibit 10 admits that each of the nine petitioning creditors has accrued vacation. The actual term used by the Debtor in its Exhibit 10 is "Accrued Vacation Expense." As shown on Debtor's Exhibit 10, the petitioning creditors' claims for accrued vacation total $31,034.14.

The accrued vacation claims of the petitioning creditors are <u>not</u> contingent. The term "contingent" is not defined in the Bankruptcy Code, but courts have commonly described a "contingent claim" as,

> [O]ne which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*In re Sundown Associates*, 150 B.R. 156, 159 (Bankr. E.D.Va. 1992) (citing *In re Pennypacker*, 115 B.R. 504, 507 (Bankr. E.D.Pa. 1990).

In <u>*Sundown Associates*</u>, the petitioning creditors were tenants of the Debtor and the Debtor held their security deposits. The court noted that although the landlord's liability to repay the deposits may be "conditional" upon the termination of the leases, that did not make the liability "contingent." The court found that the tenants held non-contingent claims and were properly counted as petitioning creditors. The Sicel claimant's situation with their vacation pay is much like Sundown tenants situation with their security deposits. Sicel's existing liability to pay

an employee for vacation (either when vacation is taken or upon termination) might be extinguished if an employee quits and fails to give ten days notice, but that does not make Sicel's liability contingent.

Nothing needs to happen in order for the Sicel petitioners to be able to take their vacation and be paid for doing so. Debtor's Exhibit 7 is the Sicel Technologies Employee Handbook ("Handbook"). The Handbook details the policies of the company. Full-time employees earn 15 days of annual leave (vacation) per year. It is <u>accrued</u> at the rate of 1.25 days per month. Exhibit 7, page 8. There are three ways for an employee to actually be paid for this earned and accrued vacation. The first way is for the employee to give ten working days notice before they leave the company. The second way is for the employee to be terminated. The third (and most common) way for an employee to be paid for vacation is for the employee to actually take a vacation and be paid for not working.

At the time of the petition, the petitioning creditors had the right to take vacation and be paid. The Debtor could not simply extinguish this claim in a letter any more than the Debtor could extinguish the claim of a supplier of materials by sending a letter saying that it did not have the money to pay. The petitioning creditors have valid, noncontingent claims to their accrued vacation benefits.

### b.  The Accrued Vacation Claims are Not the Subject of a Bona Fide Dispute

The Bankruptcy Code does not define "bona fide dispute." The Fourth Circuit has agreed with the view of other Circuit Courts that a bona fide dispute requires "an <u>objective</u> basis for either a factual or a legal dispute as to the validity of [the] debt." *In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) (emphasis added)(citing *Matter of Busick*, 831 F.2d 745, 750 (7th Cir. 1987)); *In*

*re BDC 56 LLC*, 330 F.3d 111, 117-18 (2d. Cir. 2003)) (further citations omitted). A bona fide dispute exists only when there are <u>substantial</u> factual or legal questions that bear upon a debtor's liability. *Byrd* at 437 (citing *Busick*, 831 F.2d at 750) (emphasis added).

There is no bona fide dispute with regards to the petitioning creditors' claim to accrued vacation. According to Debtor's Exhibit 10, each of the nine petitioning creditors has accrued vacation in a specific amount. According to Exhibit 10, these nine claims total $31,034.14. Of the five original petitioning creditors, four listed only a claim for vacation pay (the fifth listed vacation pay as well as expenses owed). Of those four petitioning creditors, their claims for accrued vacation exactly match the amount listed on Debtor's Exhibit 10.

The non-disputed nature of the vacation claims is also evidenced by the Debtor's own accounting policies. According to the testimony of Jennifer Pierce, a CPA and Sicel's Controller, the employees accrued vacation claims are carried on the balance sheet of the company as a liability. When Ms. Pierce was asked if she was familiar with the Financial Accounting Standards Board ("FASB"), she indicated that she was. Distinguishing accrued vacation (which is not contingent) from sick leave pay (which is contingent), the FASB explains in its Statement of Financial Accounting Standards No. 43 that "the employer has a recordable liability for vacation pay and a <u>contingency</u>, but not a recordable liability for sick pay". <u>Statement of Financial Accounting Standards No. 43: Accounting for Compensated Absences</u>, Financial Accounting Standards Board (2008). According to this accounting standard, for sick pay, the employer does not owe anything until the contingent event of illness occurs. However, that is not the case with vacation pay. Vacation pay is not considered contingent because the vacation pay accrued from the rendering of past services by the employee.

4

Vacation pay has been considered in the context of an involuntary bankruptcy petition at least once before. *In re DemirCo Group (North America), LLC* involved an involuntary petition filed by Charter One Bank, N.A. against the alleged Debtor, DemirCo Group ("DemirCo"). Seventeen creditors of DemirCo were former employees owed vacation pay that accrued while they were employed. DemirCo argued that some of those employees should be excluded from the count of DemirCo's creditors because they may have received accrued vacation time immediately upon employment with another company in an amount that was similar to the amount the employees had accrued with DemirCo. The Court found that the offer by the new company could not constitute a release of DemirCo's obligations to the former employees. *In re DemirCo Group (North America), LLC*, 343 B.R. 898 (Bankr.C.D.Il. 2006).

III.    The Salary Claims

Four petitioning creditors, Fred W. Alford, III, Michelle Sweeney, Tom Shadrix, and Lisa Armstrong, have claims of $14,990.80 for salary owed by Sicel. These employees were issued letters by Sicel's Management Team stating their salary would be reduced. However, according to the uncontradicted testimony of four witnesses – Paul McDaniel, Tom Shadrix, Lisa Armstrong, and Glenn Seymour - these employees were assured by Sicel's highest ranking executive (Paul McDaniel)[1] that the company would repay the missed salary.

a.   The Salary Claims are Not Contingent

These claims for salary by the four petitioning creditors are not contingent. There is no "extrinsic event" that needs to happen in order to trigger the liability of Sicel. Mr. McDaniel

---

[1] The Debtor called Dr. Charles Scarantino, the chairman of the Debtor's board of Directors, to testify. Dr. Scarantino testified that Mr. McDaniel was the highest ranking executive.

testified that this "missed" salary would be owed even if the company were forced to liquidate. The liability exists even though the Debtor, for the moment, does not have the funds to pay it.

    b.  The Salary Claims are Not Subject to a Bona Fide Dispute

There is not a bona fide dispute as to the salary claims by the four petitioning creditors. The facts are undisputed.  All four employees were informed by the highest ranking executive at Sicel that the company would nevertheless pay the full salary and make them whole. This testimony, by four witnesses, was not contradicted. The difference between their usual salary and this newly imposed salary is easily calculable.  According to Petitioner's Exhibit 1, a partial payment of $500 per week (the amount received) was deducted from the amount the employee usually received.  This left a salary balance owed by Sicel of $4,269.60 to Fred Alford, $4,269.60 to Michelle Sweeney, $4,269.60 to Tom Shadrix, and $2,182.00 to Lisa Armstrong. They all have a salary claim for that difference which totals $14,990.80.

IV.    Conclusion

There are nine petitioning creditors with claims for accrued vacation that are not contingent and not subject to a bona fide dispute.  There is nothing that needs to happen in order for each of the employees to take their accrued vacation and to be paid for doing so.  Sicel carries this liability on their books knowing that unless an employee quits and fails to give ten days notice, each of them is due their accrued vacation.

There are four petitioning creditors with claims for salary that are not contingent and not subject to a bona fide dispute.  Each of these employees was informed by Sicel's highest ranking executive that their salaries would be made up and they would be made whole.  This verbal amendment to their previously received letters indicating their salary would be reduced was not

contingent on anything happening in the future.  Because this directive (testified to by four uncontradicted witnesses) came from the highest ranking executive of Sicel there can hardly be a dispute as to Sicel's liability for the debt.

/s/ William P. Janvier_____
William P. Janvier
N.C. Bar No. 21136
Samantha J. Younker
N.C. Bar No. 40202
1101 Haynes Street, Suite 102
Raleigh, NC 27604
Telephone: (919) 582-2323
Facsimile: (919) 582-2301
*Counsel for Petitioning Creditors*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2010, I served copies of the foregoing **PETITIONING CREDITOR'S POST-HEARING BRIEF IN SUPPORT OF THE INVOLUNTARY CHAPTER 7 PETITION** on the parties listed below by depositing a copy of the same in the United States mail bearing sufficient postage or electronically as indicated.

Lisa P. Sumner
Poyner Spruill LLP
301 Fayetteville Street, Suite 1900    (Via e-mail)
Raleigh, NC  27601
lsumner@poynerspruill.com

Steven B. Epstein
Poyner Spruill LLP
301 Fayetteville Street, Suite 1900    (Via e-mail)
Raleigh, NC  27601
sepstein@poynerspruill.com

BY:    /s/ William P. Janvier_____
　　　　William P. Janvier
　　　　N.C. State Bar No. 21136
　　　　Samantha J. Younker
　　　　N.C. State Bar No. 40202
　　　　1101 Haynes Street, Suite 102
　　　　Raleigh, NC 27604
　　　　Telephone: (919) 582-2323
　　　　Facsimile: (919) 582-2301

8