UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                           Case No. 10-06366-8-SWH

SICEL TECHNOLOGIES, INC.,             Chapter 7 (INVOLUNTARY)

        Alleged Debtor.

**LEGAL MEMORANDUM BY SICEL TECHNOLOGIES, INC.**

NOW COMES the alleged Debtor, Sicel Technologies, Inc. ("Sicel"), by and through the undersigned counsel, and submits this legal memorandum in support of its opposition to the involuntary petition filed against it on August 10, 2010.[1]

    I.    **All Nine Petitioning Creditors are Ineligible Because a Bona Fide Dispute Exists as to Sicel's Liability to Each.**

Following enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 303(b)(1) of the Bankruptcy Code states:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title [11 USCS §§ 701 et seq. or 1101 et seq.]--
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to **liability or amount**, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1) (emphasis added). The Fourth Circuit has joined other circuits in holding that a bona fide dispute requires "'an objective basis for either a factual or a legal dispute as to the validity of [the] debt.' Thus a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability. The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *Platinum*

---

[1] Sicel presented evidence and defended against the involuntary petition on numerous grounds during the trial and continues to assert all defenses it raised, but in the interest of time, only addresses limited issues herein.

*Financial Services Corporation v. Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) (citations omitted). The burden of proof is on the petitioning creditors to establish a *prima facie* case that there is no bona fide dispute. *See, e.g., In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007).

Even though, as stated in *Byrd*, a court is permitted to determine the ultimate merits of a claim in the course of analyzing whether a bona fide dispute exists, rendering a decision on the merits at such an early stage in the process is problematic for many reasons. The most apparent reason is that the determination of whether a bona fide dispute exists under Section 303 is a decision of some urgency for the petitioners and alleged debtor whose interests may be prejudiced by a significant delay in entry of an order for relief or dismissal of the case, leaving little time for the parties to develop fully the evidence and legal arguments for presentation to the bankruptcy court or for the court to consider the merits.

Moreover, rendering a decision on the merits of a petitioner's claim at such an early stage deprives other parties, such as a trustee or other creditors who may have had an interest in objecting to the claims, from having an opportunity to be heard before the court has ruled on the validity and extent of a claim. The petitioners' interests may also be harmed if the bankruptcy case is dismissed following an expedited decision against them on the merits of their claims because their ability to pursue the claims against the alleged debtor in another forum may be barred by principles of issue or claim preclusion. For these reasons, Sicel urges the Court to limit its present decision to whether a bona fide dispute exists under Section 303, and not render a decision on the ultimate merits of the petitioners' claims against Sicel. The question is whether there is a substantial basis for dispute, not which side may ultimately win the dispute.

2

Under the *Byrd* standard, the alleged debtor can show that a creditor is not an eligible petitioning creditor by raising substantial factual or legal questions about the creditor's claim, regardless of the eventual outcome of litigation on the merits of the claim. The evidence adduced during the trial established substantial factual and legal questions regarding *all* of the petitioning creditors' claims, to wit:

- whether the "vacation pay" sought by some of the petitioning creditors[2] is contingent upon them being terminated from their employment or resigning in a manner consistent with the separation policy articulated in the Employee Handbook, Ex. 7, p. 15.[3] The evidence clearly established that the petitioning creditors have not been terminated in accordance with the separation policy and that one of them, Mr. Espenhahn, is actually now back on Sicel's payroll.[4] Both employees with direct responsibility for administering that policy testified that the petitioning creditors are *not* entitled to receive the vacation pay they claim because the contingency specified in the separation policy that triggers Sicel's obligation has not occurred and may never occur.

- whether the representation Mr. McDaniel made to employees who were placed on reduced pay on July 15, 2010, *see* Exs. 3-4 – that the reduction would be made up if and when additional funding came through – created anything more than a contingent obligation. The petitioning creditors themselves testified that whether or not such employees would ever be compensated for their reduction in pay was "contingent upon sufficient funding to pay them." Audio Transcript, Day 1, 2:14:47 (McDaniel testimony);

---

[2] During his closing argument, Mr. Janvier stated that all nine petitioning creditors claim they are owed vacation pay. He is mistaken. Though the five original petitioning creditors claimed vacation pay, not all of the subsequent petitioning creditors have.

[3] Because liability would exist only if the employees' entitlement to receive vacation pay is not contingent, the existence of a bona fide dispute as to whether it is contingent equates to a bona fide dispute as to liability.

[4] As Ms. Emanuel testified, the remainder are receiving unemployment compensation as "attached" Sicel employees, who are not required to seek other employment because they remain employees of Sicel.

*see also id.* 2:25:10 (Seymour testimony to same effect); *id.* 2:38:26 (Armstrong testimony to same effect). Moreover, whereas petitioning creditors' vacation pay was "accrued" on Sicel's books, Ms. Pierce, Sicel's controller, testified that no additional salary was accrued on Sicel's books for the employees whose pay was reduced. *Id.*, Day 2, 14:27. If accrual on the company's books were as significant as petitioning creditors suggest, lack of accrual of any additional pay should be sufficient to establish its contingent nature.

- whether the two employees claiming commissions, Mr. Shadrix and Ms. Sweeney, were entitled to any commissions as of August 10 when the company controller, Ms. Pierce, had not been provided required third-party verification of device implantation milestones, as required by the commissions policy.

The substantial factual and legal questions regarding employee vacation pay, reduced pay, and commissions are sufficient to render each petitioning creditor ineligible.

## II. Alternatively, Four Petitioning Creditors are Ineligible Because a Bona Fide Dispute Exists as to the Amount of Sicel's Liability to Each.

### A. The record evidence demonstrates significant differences between the amounts claimed and the amounts which may be owed.

A petitioning creditor is also rendered ineligible even if the only bona fide dispute as to her claim is over the amount. *In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007), ("as a consequence of the 2005 amendments . . . a dispute as to amount is sufficient to disqualify the petitioning creditor."). In this case, even if the petitioning creditors successfully withstand Sicel's liability defense to their claims for vacation pay, reduced pay, and commissions, a bona fide dispute nevertheless exists regarding the *amount* claimed by Mr. Seymour, Mr. Alford, Mr. Shadrix, and Ms. Sweeney:

4

- Mr. Seymour claims $6,115.00 for "unreimbursed expenses – vacation pay." Pet. p. 2. Sicel's evidence is that his accrued vacation pay (assuming his entitlement) is only $3,914.86. Ex. 10. The only record evidence regarding the amount of his unreimbursed expenses (assuming his entitlement) is his expense report for unreimbursed travel in the amount of $430.92. Pet. Ex. 4; Audio Transcript, Day 2, 1:05:12, 1:07:44 (no proof of any other reimbursable expenses). The $6,115.00 he claims is therefore $1,769,22 in excess of the $4,345.78 that can be established from the record evidence. Hence, there is clearly a bona fide dispute as to the amount of his claim.

- Mr. Alford claims a total of $16,261.60: $11,242 in vacation pay, $4,269.60 in reduced salary, and $750 for unreimbursed car allowance. Sicel's evidence is that his accrued vacation pay (assuming his entitlement) is only $5,251.20. Ex. 10. Petitioning creditors did not even attempt to rebut Ms. Emanuel's testimony that pursuant to the terms of the July 15 communication to regional sales staff, Ex. 3 – including Mr. Alford – no more travel was permitted and that car allowances were therefore suspended. Audio Transcript, Day 1, 17:09, 43:23, 45:33, 47:09. Consequently, even assuming Mr. Alford's entitlement to $4,269.60 in reduced pay, the evidence would establish liability to him only in the amount of $9,490.20 -- $6,770.80 less than he claims. Hence, there is clearly a bona fide dispute as to the amount of his claim.

- Mr. Shadrix claims a total of $34,563.34: $22,000 in commissions, $7,543.74 in vacation pay, $4,269.60 in reduced salary, and $750 for unreimbursed car allowance. Ex. 12.[5] With respect to commissions, Ms. Pierce testified that the third-party implantation verifications placed before her by Mr. Janvier would establish Mr. Shadrix's entitlement

---

[5] For some reason, Mr. Shadrix's August 20, 2010 letter to the court seeking vacation pay and commissions was omitted from the petitioning creditors' August 23 CM/ECF filing, DE #17. Yet there is no dispute he claims these items, and his signed August 20 letter to the court judicially estops him from now contending otherwise.

5

to $5,000 in commissions and Ms. Sweeney's entitlement to $6,000 in commissions, but no more. Audio Transcript, Day 2, 55:14. During his closing argument, Mr. Janvier stated: "I guess it's fair to say that there does seem to be a dispute as to the amount of their commissions. There is no dispute as to the first $11,000, but there probably is a dispute as to the rest of it." *Id.* 1:48:52. Furthermore, Sicel's evidence is that Mr. Shadrix's accrued vacation pay (assuming his entitlement) is only $3,550.00. Ex. 10. As discussed *supra*, there is no record support for his claim to unreimbursed car allowance. Consequently, even assuming Mr. Shadrix's entitlement to $4,269.60 in reduced pay, the evidence would establish liability to him only in the amount of $12,189.60 -- $22,373.74 less than he claims. Hence, there is clearly a bona fide dispute as to the amount of his claim.

- Ms. Sweeney claims a total of at least $31,788.83: $21,000 in commissions, at least $5,769.23 in vacation and sick pay,[6] $4,269.60 in reduced salary, and $750 for unreimbursed car allowance. DE #8, p. 3. As discussed *supra*, Mr. Janvier concedes that any amount she claims for commissions above $6,000 is the subject of a bona fide dispute. Furthermore, Sicel's evidence is that Ms. Sweeney's accrued vacation pay (assuming her entitlement) is only $5,176.92. Ex. 10. No evidence was offered to rebut Ms. Sweeney's testimony that she is not entitled to accrued sick pay. Audio Transcript, Day 1, 46:51. As discussed *supra*, there is also no record support for her claim to unreimbursed car allowance. Consequently, even assuming Ms. Sweeney's entitlement to $4,269.60 in reduced pay, the evidence would establish liability to her only in the

---

[6] She states she is "owed weeks of numerous weeks of vacation and sick days[.]" DE #17, p. 3. Assuming that means at least three weeks, those 120 hours would translate to $5,769.23 in vacation pay per Exhibit 10. It is difficult to know what she claims for sick pay and no evidence was presented regarding that.

6

amount of $15,446.52 -- $16,342.31 less than she claims. Hence, there is clearly a bona fide dispute as to the amount of her claim.

Critically, the remaining five petitioning creditors' claims – Crew ($1,452.12), McDaniel ($4,184.25), Espenhahn ($1,719.46), McNulty ($2,675.32), and Armstrong ($2,182.00) – aggregate to only $12,213.15, short of the $14,425 required by Section 303(b)(1). Consequently, because Messrs. Seymour, Alford, Shadrix, and Ms. Sweeney are ineligible to serve as petitioning creditors, and the statutory threshold cannot be met by aggregating the remaining petitioning creditors' claims, the petition is invalid and must be dismissed.

### B. The undisputed portions of the ineligible petitioners' claims do not qualify under Section 303(b)(1).

During his closing argument, while agreeing that portions of petitioning creditors' claims were subject to a bona fide dispute, Mr. Janvier appeared to suggest that the Court could consider other portions of the claims in isolation – and ignore the disputed portions – to determine eligibility. His approach, however, would render the words "or amount" wholly superfluous. For example, if an alleged debtor concedes that $5,000 of a $10,000 claim is valid, but the remaining $5,000 is the subject of a bona fide dispute, a bona fide dispute as to amount clearly exists and by operation of the statute's plain language renders the creditor ineligible. If Congress wanted the disputed portion of the claim to be ignored for purposes of determining eligibility, it would not have required petitioning creditors' claims to be undisputed "as to liability *or* amount."

"The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that 'when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" *In re Lamie*, 540 U.S. 526, 534 (2004). This principle

7

of statutory construction applies equally to the Bankruptcy Code. *In re Simmons*, 179 B.R. 645, 646 (Bankr. E.D. Mo. 1995) ("This determination is supported by the opinions of the United States Supreme Court that have indicated that Bankruptcy Courts are to follow the plain meaning of statutes. *See Rake v. Wade*, ___ U.S. ___, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993); *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).). *See also Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead, we must give effect to the text Congress enacted." [Interpreting 28 U.S.C.S. § 2680(c)]).

This Court was clearly troubled by the notion that a petitioning creditor could be rendered ineligible if only a portion of the amount she claims is in dispute. The extreme example of a $1 dispute over a $1 million debt is probably best answered by Congress's requirement that the dispute over the amount claimed must be **bona fide** to render a petitioning creditor ineligible. If the alleged debtor disputes only $1 of $1 million, common sense would suggest that the dispute over the amount claimed is not bona fide and does not defeat eligibility. Yet the converse example helps demonstrate why the words "or amount" must be accorded their plain meaning. If the alleged debtor disputed $999,999 of a $1 million debt, the fact that $1 was not disputed would not satisfy the statutory command that there be no bona fide dispute as to liability or amount. In that situation a bona fide dispute would exist as to the amount even though liability for $1 was not in dispute, and the petitioning creditor would be ineligible.

Moreover, the Court here is not faced with anything approaching the $1/$1 million hypothetical:

- As to Mr. Seymour, $1,769.22 of the $6,115.00 he claims is the subject of a bona fide dispute.

8

- As to Mr. Alford, $6,770.80 of the $16,261.60 he claims is the subject of a bona fide dispute.

- As to Mr. Shadrix, $22,373.74 of the $34,563.34 he claims is the subject of a bona fide dispute.

- As to Ms. Sweeney, $16,342.31 of the $31,788.83 she claims is the subject of a bona fide dispute.

Because sizable portions of each of these petitioning creditors' claims are the subject of a bona fide dispute, it is not troubling in the least to conclude that Congress did not intend them to qualify as eligible petitioning creditors.

The Bankruptcy Court for the District of Oregon was faced with this precise question in *Excavation, Etc., LLC,* 2009 Bankr. LEXIS 1905 (Bankr. D. Ore. 2009). In that case, there was a dispute of "tens of thousands of dollars" between the claim of one of three petitioners versus a smaller amount for which the debtor conceded liability. *Id.* at *4-5. The petitioner argued that the dispute as to amount did not render the petitioner's claim ineligible because the court could disregard the disputed portion of the debt and focus on the undisputed amount in order to satisfy the statutory requirements of section 303(b)(1). *Id.* The court rejected the petitioner's argument, explaining as follows:

> [Petitioner], relying on *In Focus Media,* 378 F.3d 916, 926 (9th Cir. 2004), argues that this doesn't matter, because at least part of the debt is acknowledged by the alleged debtor. In *Focus,* following *In re Seko Investment, Inc.*, 156 F.3d 1005 (9th Cir. 1998), provides that a "dispute as to the amount of the claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction, and (2) 'netting out the claims of debtors' could take the petitioning creditors below the amount threshold of § 303."
>
> The BAPCPA amendments of 2005 added to § 303 a provision that a claim would be excluded if subject to a bona fide dispute as to liability or amount. This overrules *Seko* and *In Focus*. If the *In Focus* rule were to remain in effect, the "and amount" language would be superfluous, since under *In Focus* the only dispute as to amount is a dispute over the entire claim, or at least a big enough

9

> dispute that netting out would take the claim below the monetary threshold. It is a basic canon of statutory construction that language be given its full effect. *See e.g, U.S. v. Church of Scientology Western*, ___ U.S.___, 973 F.2d 715, 717 (9th Cir. 1992); *U.S. v. Allen*, 341 F.3d 870, 878 (9th Cir. 2003). That would not occur if *In Focus* is applied. Because the debt of [Petitioner] is subject to a bona fide dispute as to amount, [Petitioner] is not a valid petitioning creditor.

*Id.* The involuntary petition in *Excavation* was dismissed because, after eliminating one petitioning creditor whose claim was disputed as to amount, only two petitioning creditors were left when three were required. *Id.*

Similarly, the court in *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, (Bankr. N.D. Tex 2009), emphasized the importance of assigning significant meaning to the new language in Section 303(b)(1).[7] "[T]he [BAPCPA] amendment cannot be ignored. It did something. It has some significance. It appears to this court that the amendment at least clarified, and perhaps even expanded the universe of when is there a 'bona fide dispute' with regard to a claim. Now, it is clear that a claim is the subject of a bona fide dispute if either the liability itself is in dispute **or merely the amount is in dispute**. If nothing else, this signals that Congress continues to caution that holders of questionable claims ought not to be allowed to force companies into bankruptcy against their will." *Id.* at 923 (emphasis added). *See also In re Bimini Island Air, Inc.*, 370 B.R. 408, 413 (Bankr. S.D. Fla. 2007) ("Under the BAPCPA amendment to § 303, a dispute as to the amount of the debt claimed is apparently sufficient to render a petitioning creditor ineligible"); *In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007) ("As a result of the [2005 BAPCPA] amendment [to 11 U.S.C. § 303], any dispute

---

[7] The court also noted that the Bankruptcy Code's definition of "claim" in Section 101(5) is much broader than the meaning of "claim" in Section 303(b) and has little bearing. "Section 303(b) indicates that it is not enough merely to hold a Section 101(5) claim against the alleged debtor to commence an involuntary petition. It has to be a certain kind of claim: one more narrow than that defined in Section 101(5); it has to be a claim not the subject of a **bona fide dispute as to liability or amount**." *Id.* at 920 (emphasis in original).

10

regarding the amount that rises from the same transaction and is directly related to the underlying claim should render the claim subject to *bona fide* dispute.").

The Bankruptcy Court for the Southern District of Florida has also recognized that, as the result of the 2005 amendment, "any dispute **regarding the amount of the petitioning creditors' claims** that arises from the same transaction and is part of the underlying claim renders the claim subject to a *bona fide* dispute." *In re Rosenberg*, 414 B.R. 826, 846 (Bankr. S.D. Fla. 2009) (emphasis added). At issue in *Rosenberg* was a confessed judgment emanating from a limited guaranty. The court cited the legislative history of the 2005 amendments that section 303(b)(1) was being amended "'to specify that a creditor would be ineligible to file an involuntary petition if the creditor's claim was the subject of a bona fide dispute as to liability or amount.'" *Id.* at 845 (quoting H.R. Rep. 109-31(I), 2005 U.S.C.C.A.N. 88 (emphasis removed)). The alleged debtor in *Rosenberg* disputed any liability under a limited guaranty other than out-of-pocket expenses incurred in collection efforts. *Id.* at 848. He also contended that he was entitled to a substantial credit on what was owed. *Id.* at 847. He therefore argued that the amount sought in the petition was inaccurate and "in excess of any amount allegedly due under the Limited Guaranty." *Id.* at 848. The court concluded that this dispute over the amount he owed was bona fide and dismissed the petition with prejudice. *Id.*

Similarly, in *In Re La Stanza Diva Ristorante, Inc.*, 2009 Bankr. LEXIS 936 (Bankr. D. Mass. Apr. 10, 2009), a petitioning creditor who claimed the alleged debtor owed him $12,500 had kept records of credits and debits which revealed that the balance owed him was actually only $1,168.97. The court concluded that this evidence was sufficient to establish a bona fide dispute as to the amount of his claim. *Id.* at *9-10. Notably, the court did not reason that because $1,168.97 was not in dispute, the creditor was still an eligible petitioning creditor.

11

The Bankruptcy Court for the Southern District of New York in *In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007), went one step further, denying a petitioning creditor the ability to amend its petition to assert only the portion of its claim that was not subject to a bona fide dispute. After citing the then-current edition of *Collier on Bankruptcy* for the proposition that "'disputes as to amount – not just liability – are sufficient to create a bona fide dispute,'" *id.* at 634 (quoting *Collier on Bankruptcy* ¶ 303.30[2][b], 303-32 (15th rev. ed. 2006)), the court stated:

> The crux of [Petitioner's] argument is its willingness to make post-petition corrections to its initial claim to prove that, although hundreds of thousands of dollars may be in dispute, at least some amount (though ultimately no definitive amount) above the $13,475 threshold in 11 U.S. C. § 303(b) must not be in dispute. These concessions do not, as [Petitioner] contends, eliminate the bona fide dispute. Rather, they raise serious concerns over the legitimacy of [Petitioner's] entire claim. That a claim could have been filed in good faith when a substantial portion of that claim was the subject of a dispute on its face is untenable.

*Id.* at 634.

Notably, the bankruptcy court whose opinion is most recognized for the opposite interpretation of Section 303(b)(1) did not even quote the language of the post-BAPCPA version of the statute correctly in its decision. In *In re Demirco Holdings, Inc.*, 2006 Bankr. LEXIS 1131 (Bankr. C.D. Ill. June 9, 2006), the court twice cited the amended statute as using the conjunctive connector "and" between "liability" and "amount," rather than the disjunctive connector "or" that Congress actually used. *Id.* at *9 ("The addition of the words 'as to liability *and* amount' in the 2005 amendments is compatible with that original intent and no legislative history was found to suggest otherwise. . . . this Court cannot presume that Congress added the phrase "as to liability *and* amount" with the intent that the claims of involuntary petitioners must now be fully liquidated . . . ") (emphasis added). Given the significance of this linguistic

12

error, one must question whether the court's decision would have been different if it had correctly read the statute. It does not appear that the court from which *Demirico* emanated has revisited the statute in any reported opinions since 2006.

## CONCLUSION

Ample evidence before the Court creates substantial factual and legal questions as to whether Sicel is liable in any amount to any of the petitioning creditors. However, even if the Court concludes that Sicel bears liability to all nine petitioning creditors, the bona fide disputes as to the amounts claimed by Messrs. Seymour, Alford, Shadrix, and Ms. Sweeney render them ineligible to serve as petitioning creditors. Because the aggregated amount of the claims of the remaining five petitioning creditors does not meet the statutory threshold, the petition is invalid and must be dismissed.

Dated: August 26, 2010

POYNER SPRUILL $^{LLP}$

By: s/ Lisa P. Sumner
Steven B. Epstein
NC Bar No. 17396
Lisa P. Sumner
NC Bar No. 22838
Post Office Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2869
Fax: (919) 783-1075
E-mail: sepstein@poynerspruill.com
lsumner@poynerspruill.com
*Attorneys for Sicel Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the following with the foregoing Legal Memorandum by Sicel Technologies, Inc. by depositing a copy of the same in the United States Mail, postage prepaid, in an envelope properly addressed, or by CM/ECF as follows:

| | |
|---|---|
| William Janvier<br>1101 Haynes Street, Suite 102<br>Raleigh, NC 27604 | |
| Bankruptcy Administrator<br>P. O. Box 3758<br>Wilson, NC 27894 | |

Dated: August 26, 2010

POYNER SPRUILL LLP

By: s/ Lisa P. Sumner
Lisa P. Sumner
NC Bar No. 22838
Post Office Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2869
Fax: (919) 783-1075
E-mail: lsumner@poynerspruill.com
*Attorneys for Sicel Technologies, Inc.*